UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EUCHARIA ENECHI,

                  Plaintiff,

        -against-

THE CITY OF NEW YORK, MARSHA
KELLAM, CHERYL CONSTANTINE,
SHERLEY FERGUSON, SHATONYA
MIGGINS, CARLEN ANDERSON, NANCY
KERNISANT-DUBOIS, and JOHN and JANE
DOE (said names being fictitious, the persons
intended being those who aided and abetted the
unlawful conduct of the named Defendants),

                  Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/27/2023 __

20 Civ. 8911 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Eucharia Enechi, brings this employment discrimination action against

Defendants the City of New York (the "City"), Marsha Kellam, Cheryl Constantine, Sherley

Ferguson, Shatonya Miggins, Carlen Anderson, and Nancy Kernistant-Dubois, pursuant to the

Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Rehabilitation

Act of 1973 ("Rehab Act"), 29 U.S.C. § 701 *et seq.*; Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e *et seq.*; the New York State Human Rights Law ("NYSHRL"),

N.Y. Exec. L. § 290 *et seq.*; the New York City Human Rights Law ("NYCHRL"), N.Y.C.

Admin. Code § 8-101 *et seq.*; and the Family and Medical Leave Act of 1993 ("FMLA"), 29

U.S.C. § 2601 *et seq.*  Compl. ¶¶ 1, 162–236, ECF No. 1.

    Plaintiff, a child protective specialist supervisor level 1 ("CPSS I") currently employed

with the New York City Administration for Children Services ("ACS"), *see id.* ¶¶ 4, 78, 126;

Pl. 56.1 ¶¶ 1, 5, ECF No. 109, alleges that the City violated her rights under the ADA and the

Rehab Act by discriminating against her based on her disabilities, and under Title VII by

discriminating against her based on her national origin.  Compl. ¶¶ 162–69, 173–79, 183–88.

Plaintiff further claims that all Defendants violated her rights under the NYSHRL and the

NYCHRL by discriminating against her and subjecting her to a hostile environment based on her

disabilities and national origin.  *Id.* ¶¶ 204–19, 228–36.  And, she also alleges that they interfered

with her rights under the FMLA.  *Id.* ¶¶ 192–98.  Lastly, Plaintiff claims that all Defendants

retaliated against her for making complaints of disability and national origin discrimination and

for exercising her rights under the FMLA.  *Id.* ¶¶ 170–72, 180–82, 189–91, 199–203, 220–27.

Before the Court is Defendants' motion for summary judgment on all counts.  ECF No.

101; *see also* Defs. Mem., ECF No. 106.  For the reasons stated below, Defendants' motion is

GRANTED in part, and DENIED in part.

## BACKGROUND[1]

In 1996, Plaintiff, who was born in Nigeria and immigrated to the United States in 1991,

began working for ACS in the child protection unit as a child protective specialist ("CPS").

Pl. 56.1 ¶¶ 1, 431, 432, 435.  In 2002, Plaintiff was promoted to CPSS I, and then, in 2007, she

was promoted to child protective specialist supervisor level 2 ("CPSS II").  *Id.* ¶¶ 2, 444.  As a

CPSS II, Plaintiff was responsible for, among other things, supervising five CPS employees,

providing feedback to them, and correcting their performance issues.  *See id.* ¶¶ 9–12.  She also

completed performance reviews for the CPSs and documented their work performance issues.

*See id.* ¶ 12.

---

[1] The facts in this section are taken from the parties' Rule 56.1 statements and responses, unless otherwise noted.
Disputed facts are so noted.  Citations to a paragraph in a Rule 56.1 statement also include the opposing party's
response.  "[W]here there are no citations[,] or where the cited materials do not support the factual assertions in the
[s]tatements, the Court is free to disregard the assertion."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)
(alteration omitted).  On a motion for summary judgment, the facts must be read in the light most favorable to the
non-moving party.  *Id.* at 69.

In 2009, Plaintiff notified ACS that she had been diagnosed with skin cancer, which required several rounds of radiation and chemotherapy. *See id.* ¶ 467. After she received chemotherapy, Plaintiff began to suffer from diabetic neuropathy, a medical condition that prevented her from typing reports on a computer when, on certain days, her hands were inflamed and painful. *See id.* ¶ 470. Plaintiff claims that she requested a dictation headset as a reasonable accommodation for her disability; Defendants contend that "there is no evidence that Plaintiff subsequently submitted a [reasonable accommodation] seeking a dictation device." *Compare id.* ¶¶ 473–75, *and* ECF No. 110-1 at 24:23–25:14, *with* Defs. Reply at 8, ECF No. 114. Plaintiff also suffers from, among other things, sleep disorders, bilateral lower extremity cellulitis, complications from diabetes, chronic non-healing ulcers, and cardiomyopathy, and requires daily wound care. *See* Pl. 56.1 ¶¶ 64–65.

From 2005 to early 2012, Keisha Clark supervised Plaintiff. *See id.* ¶¶ 106, 446. During that time, Clark issued performance evaluations which note Plaintiff's strengths, deficiencies, and areas needing improvement. *See id.* ¶¶ 15, 17–18. For example, in her 2007-08 evaluation, Plaintiff received an overall rating of "Good," but Clark wrote that Plaintiff "need[ed] to be more consistent with documentation of her reviews and supervision." ECF No. 101-8 at 4; Pl. 56.1 ¶ 15. Likewise, Plaintiff's 2009-10 evaluation notes that she received an overall rating of "Good," but concludes that her "areas that require strengthening" included "timely supervisory reviews and documentation, timely submission of safety assessments and investigations, unit caseload management, and adherence to court appearances." ECF No. 101-8 at 7; Pl. 56.1 ¶ 17. On August 16, 2011, Clark held a supervisory session with Plaintiff citing her "lateness" and need to improve her "progressive documentation as it relates to staff and their casework practice deficiencies." ECF No. 101-9 at 1–2; Pl. 56.1 ¶ 18.

Starting in April 2012, Cheryl Constantine began supervising Plaintiff.  *See* Pl. 56.1 ¶¶ 111, 484.  Constantine likewise issued performance evaluations which note Plaintiff's work-related deficiencies and areas needing improvement.  *See id.* ¶¶ 20–30.  For instance, in Plaintiff's 2014-15 evaluation, Constantine gave Plaintiff an overall rating of "Good," but wrote that Plaintiff "has had difficulty reviewing staff workload in a timely manner" and "has had difficulties managing her workload and prioritizing and using time effectively."  ECF No. 101-8 at 9; *see* Pl. 56.1 ¶ 21.  In Plaintiff's 2016-17 evaluation, Plaintiff received unsatisfactory ratings on three tasks and conditional ratings on the other eleven tasks, for an overall rating of "Conditional."  Pl. 56.1 ¶ 30; *see* ECF No. 101-8 at 10–15.

On July 11, 2017, Plaintiff received a corrective action plan ("CAP").  Pl. 56.1 ¶ 32.  On November 27, 2017, Constantine held a supervisory session with Plaintiff, during which she stated that Plaintiff failed to hold her staff accountable and did not write up staff for insubordination.  *See id.* ¶ 34; ECF No. 101-18 at 24.  Less than a month later, on December 12, 2017, Constantine issued an interim evaluation, in which Constantine outlined several areas that required improvement, including: "[d]ifficulties reviewing subordinate work in a timely manner"; "[d]ifficulties ensuring that staff was documenting all casework activities"; and Plaintiff's "condescending" "tone when speaking with the staff."  ECF No. 101-20 at 2; Pl. 56.1 ¶ 37.

By email dated October 2017, Marsha Kellam, the Queens borough commissioner for ACS, alerted an ACS attorney about issues concerning Plaintiff:

> I received documentation from CPSS II [stating that Plaintiff] suffers from a medical condition.  This condition is impacting her work as a [s]upervisor.
>
> She received an overall rating of conditional [in the] evaluation, and I understand . . . that this rating will be dropping to an unsatisfactory.  The plan is to proceed with a level change.

ECF No. 110-27 at 7.  On December 15, 2017, Kellam requested that Plaintiff's level be demoted from CPSS II to CPSS I.  *See* Pl. 56.1 ¶ 122; *see also id.* ¶ 153; ECF No. 101-57.  ACS human resources staff delayed approval of the demotion and stated that "[b]ecause there is/was mention of a medical condition, [they were] taking a deep dive" and would need more information about "[w]hether the agency would be liable for disability discrimination."  ECF No. 110-27 at 3–4.  On January 24, 2018, the ACS ADA coordinator, Jessica Cooke, interviewed Plaintiff to determine the impact her disabilities were having on her work.  *See* Pl. 56.1 ¶¶ 592–94; ECF No. 110-132.

On May 17, 2018, Plaintiff was issued her 2017-18 performance evaluation, with an overall rating of "Unsatisfactory" based on an unsatisfactory rating on twelve tasks and two conditional ratings.  *See* Pl. 56.1 ¶¶ 39–40.  On May 23, 2018, Plaintiff received another CAP.  *See id.* ¶ 41.  On June 18, 2018, Plaintiff was demoted from CPSS II to CPSS I.  *See id.* ¶ 123.  The demotion also included a 21 percent salary decrease.  *See id.* ¶ 41; Pl. Opp. at 3, ECF No. 111; ECF No. 110-38.

Plaintiff claims that, while working under Constantine's supervision, Plaintiff was subject to derogatory comments about her disabilities and national origin.  On August 24, 2015, Plaintiff reported to Kellam that Constantine "made fun of [her] accent and made other inappropriate gestures" and "freely discussed [her] medical condition" with her subordinates.  ECF No. 110-24 at 3–4.  Plaintiff alleges that in 2017, Constantine called her a "foreigner" several times in an angry tone and stated that Plaintiff's supervisees could not understand her accent.  *See* Pl. 56.1 ¶¶ 569–73.  And, Plaintiff alleges that in 2017, Constantine made fun of her medical condition by making a crude remark about her legs.  *See id.* ¶ 574.

On June 22, 2018, Plaintiff took FMLA leave because of her medical condition.  *See id.* ¶¶ 75, 606.  While on leave, on March 3, 2019, Plaintiff filed a charge of discrimination against ACS with the U.S. Equal Employment Opportunity Commission ("EEOC").  *See id.* ¶ 613; ECF No. 110-52.  Plaintiff received multiple extensions to her FMLA leave and eventually returned almost a year later on June 10, 2019.  *See* Pl. 56.1 ¶¶ 75–79, 606.

Two months after returning from leave, on August 17, 2019, Plaintiff was assigned to the reception desk to work under Nancy Kernisant-Dubois.  *See* Pl. 56.1 ¶¶ 125–26.  Kellam wrote that Plaintiff "was given a reasonable accommodation and assigned the task of the receptionist." ECF No. 110-63 at 2.  However, there is no evidence that the agency engaged in an interactive process to determine whether the reassignment constituted a reasonable accommodation, and, when asked by Cooke, Kellam did not provide documentation supporting her claim that the reassignment was a reasonable accommodation.  ECF No. 110-65 at 2; *see* Pl. Opp. at 19.

On October 24, 2020, Plaintiff commenced this action.  Compl.  Discovery closed on May 13, 2022, ECF No. 86, and on December 19, 2022, Defendants filed a motion for summary judgment, ECF No. 101.

## DISCUSSION

### I.   Legal Standard

Summary judgment is appropriate where the record shows "that there is no genuine dispute as to any material fact" and that the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

The moving party initially bears the burden of demonstrating the absence of a genuine dispute of material fact by citing evidence in the record.  *See Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro, Vt.*, 287 F.3d 162, 165 (2d Cir. 2002).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact.  Fed. R. Civ. P. 56(c)(1); *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  In doing so, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), as "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).  And, "a plaintiff's own self-serving statements are insufficient to raise a triable issue of fact."  *Rhone v. United States*, No. 04 Civ. 5037, 2007 WL 3340836, at *9 (S.D.N.Y. Nov. 9, 2007).  On a motion for summary judgment, courts view the record in the light most favorable to the non-moving party.  *Koch*, 287 F.3d at 165.

Courts must be "cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question," and must "carefully scrutinize[]" the non-moving party's affidavits and depositions for "circumstantial proof which, if believed, would show discrimination."  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citation omitted).

II.    <u>Analysis</u>

A.  Timeliness

Defendants argue that the Court should grant summary judgment on certain of Plaintiff's claims because they are time barred.  *See* Defs. Mem. at 5–7.  Not so.  All of Plaintiff's causes of action are timely.

For ADA and Title VII claims to be timely, the alleged discriminatory conduct must have occurred less than 300 days before the filing of an EEOC charge. *See* 42 U.S.C. §§ 2000e-5(e)(1), 12117(a); *Harvin v. Manhattan & Bronx Surface Tr. Operating Auth.*, 767 F. App'x 123, 126 n.2 (2d Cir. 2019) (summary order). Rehab Act, NYSHRL, and NYCHRL claims are subject to a three-year statute of limitations. *See Volpe v. N.Y.C. Dep't of Educ.*, 195 F. Supp. 3d 582, 594 (S.D.N.Y. 2016); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 573 (S.D.N.Y. 2011).

Because Plaintiff filed her EEOC charge on March 3, 2019, any alleged misconduct that occurred on or before May 7, 2018, is time barred under the ADA and Title VII. But, Plaintiff alleges two adverse employment actions under the ADA and Title VII—the June 2018 demotion and the August 2019 reassignment to the reception desk—both of which occurred after May 7, 2018. *See* Pl. Opp. at 5, 18–19. Therefore, Plaintiff's discrimination and retaliation claims under the ADA and Title VII are timely.

Similarly, because Plaintiff filed her complaint on October 24, 2020, any allegations arising from acts that occurred on or before October 24, 2017, are time barred under the Rehab Act, the NYSHRL, and the NYCHRL. As noted above, the two adverse employment actions alleged by Plaintiff occurred after October 24, 2017. Further, as to Plaintiff's hostile work environment causes of action, those claims "are different in kind from discrete acts, as their very nature involves repeated conduct." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (citations omitted). "As a result, a 'charge alleging a hostile work environment claim will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.'" *Rosen v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 6670, 2019 WL 4039958, at *4 (S.D.N.Y. Aug. 27, 2019) (quoting

*Davis-Garett*, 921 F.3d at 42).  Defendants do not dispute that some of Plaintiff's hostile work environment allegations are timely, including those which are described in one of Plaintiff's complaints to the EEOC from February 2018.[2]  *See* Defs. Mem. at 17–18.  Construing the record in the light most favorable to Plaintiff, Plaintiff has alleged timely acts in support of her hostile work environment claim, and prior acts were part of the same employment practice; therefore, allegations of acts before October 24, 2017, shall be considered.[3]

### B.   Discrimination Claims

Employment discrimination claims under the ADA, the Rehab Act,[4] Title VII, and the NYSHRL are governed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Frantti v. New York*, 850 F. App'x 17, 19 (2d Cir. 2021) (summary order) (ADA and Rehab Act); *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015) (Title VII); *Ben-Levy v. Bloomberg*, 518 F. App'x 17, 18 (2d Cir. 2013) (summary order) (ADA and NYSHRL).

The *McDonnell Douglas* framework first requires a plaintiff to establish a prima facie case of discrimination.[5]  In employment discrimination cases, "the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination."  *Tex. Dep't*

---

[2] Plaintiff previously met with an EEOC investigator in February 2018 regarding a discrimination complaint she had filed against Constantine.  Pl. 56.1 ¶ 97; ECF No. 110-117.  This complaint was separate from the EEOC charge filed on March 3, 2019.

[3] Defendants also argue that Plaintiff has failed to attribute any employment actions to Defendants Ferguson, Miggins, or Anderson.  Defs. Reply at 2 n.1.  Defendants raise this argument for the first time in a footnote to their reply.  *See id.*  The Court, therefore, shall not consider this argument.

[4] Defendants argue that Plaintiff cannot establish a cause of action under the Rehab Act because she must show that ACS received federal funding.  Defs. Mem. at 18.  Plaintiff has provided evidence that ACS received over $1 billion in federal funding in 2022, ECF No. 110-136, and Defendants do not argue that ACS did not receive federal funding.  *See generally* Defs. Mem.; Defs. Reply.  Therefore, the Court declines to grant summary judgment on the Rehab Act claims on this basis.

[5] The Court rejects Plaintiff's argument that the framework set forth in *McMillan v. City of New York*, 711 F.3d 120 (2013), rather than the *McDonnell Douglas* framework, should apply to Plaintiff's disability discrimination claims.  *See* Pl. Opp. at 4.  The *McMillan* framework does not apply in this case because the parties do not agree that "the employer complains of conduct that is the direct result of the employee's disability."  *McMillan*, 711 F.3d at 129.  Defendants contend that their actions against Plaintiff were unrelated to her disabilities.  Defs. Reply at 3.

*of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–53 (1981).  "To establish a prima facie case of discrimination, a plaintiff must demonstrate (1) that [s]he belonged to a protected class; (2) that [s]he was qualified for the position [s]he held; (3) that [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination."  *Ben-Levy*, 518 F. App'x at 18–19; *see Ruiz v. County of Rockland*, 609 F.3d at 486, 491–92 (2d Cir. 2010).

If the plaintiff meets this burden, the burden shifts to the defendant to offer a legitimate, nondiscriminatory business rationale for its action.  *See Littlejohn*, 795 F.3d at 307; *Ben-Levy*, 518 F. App'x at 19.  If the defendant does so, then the burden shifts back to the plaintiff to prove that the defendant's actual purpose was discriminatory.  *See Ben-Levy*, 518 F. App'x at 19; *Ruiz*, 609 F.3d at 492.  The plaintiff must "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination."  *Ben-Levy*, 518 F. App'x at 19 (citation omitted); *see Ruiz*, 609 F.3d at 492–93.

The ADA and Rehab Act require a plaintiff to prove disability "discrimination was the but-for cause" of an adverse employment action.  *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019).  "[A] plaintiff's injury can have multiple 'but-for' causes, each one of which may be sufficient to support liability."  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 n.5 (2d Cir. 2013).  In contrast, Title VII only requires a plaintiff to show that national origin was a "motivating factor for any employment practice, even though other factors also motivated the practice."  *Naumovski v. Norris*, 934 F.3d 200, 213 (2d Cir. 2019).  The standard under the NYSHRL is also a "motivating factor."  *Reichman v. City of New York*, 117 N.Y.S.3d 280, 287 (N.Y. App. Div. 2020).  Lastly, discrimination claims under the NYCHRL are "reviewed 'independently from and more liberally than' federal or state discrimination claims."  *Ben-Levy*,

518 F. App'x at 19–20 (citation omitted).  "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing its provisions broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015) (cleaned up).

Here, under the *McDonnell Douglas* framework, Defendants concede that Plaintiff has established the first two prongs of a prima facie case of discrimination: (1) she belongs to a protected class because of her disabilities and national origin; and (2) she was qualified for the CPSS II position.  Defs. Mem. at 5; *see Ben-Levy*, 518 F. App'x at 18–19.  As to the third prong, Defendants argue that "other than [Plaintiff's] June 2018 level change and August 2019 reassignment to the reception desk, the alleged employment related acts upon which she bases her claim do not constitute adverse employment actions."  Defs. Mem. at 5.  The Court finds that Plaintiff has only identified the June 2018 demotion and the August 2019 reassignment as adverse employment actions.  *See* Pl. Opp. at 5, 18–19; *see generally id.*  To the extent Plaintiff alleges that other conduct constituted an adverse employment action, that argument is abandoned.[6]  *See Williams v. Mirabal*, No. 11 Civ. 366, 2013 WL 174187, at *2 (S.D.N.Y. Jan. 16, 2013) ("A court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'" (citation omitted)).

The parties dispute the final prong: whether Plaintiff raises an inference of discrimination.  *See* Defs. Mem. at 10–11; Pl. Opp. at 5.  The Court shall separately address Plaintiff's disability and national origin discrimination claims.

---

[6] An employment action is considered adverse if the employee suffers a "materially adverse change in the terms and conditions of [her] employment."  *See Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) (citation omitted).  "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citation omitted).  In her opposition papers, Plaintiff does not argue that Defendants' other conduct resulted in a materially adverse change to the terms and conditions of her employment.

11

1.   Disability Discrimination

Based on the record, Plaintiff has raised an inference of disability discrimination. Defendants' internal communications establish a genuine dispute of material fact as to whether Defendants' adverse actions were motivated by a discriminatory purpose.  For instance, by email dated October 10, 2017, Kellam advised an ACS attorney that Kellam had "received documentation from CPSS II [stating that Plaintiff] suffers from a medical condition.  This condition is impacting her work as a [s]upervisor."  ECF No. 110-27 at 7.  On November 8, 2017, Plaintiff emailed, amongst others, Constantine and Ferguson, advising them that Plaintiff could not attend a training because of a preapproved medical appointment for wound care.  *See* ECF No. 110-41 at 2; Pl. 56.1 ¶ 605.  After Ferguson forwarded the email to Kellam, Kellam responded, "We will make it part of the package [to support Plaintiff's demotion]."  ECF No. 110-41 at 2; *see* Pl. 56.1 ¶ 605.  On December 21, 2017, ACS human resources delayed approval of Plaintiff's demotion "[b]ecause there is/was mention of a medical condition."  ECF No. 110-27 at 4.  The next day, human resources emailed Kellam, "There are concerns that must be very carefully addressed if the decision is to move forward on this issue."  *Id.* at 2.  Kellam subsequently responded, "Just a fyi.  Her medical condition is not the problem, she cannot do the work."  *Id.*

Further, Defendants' failure to engage in an interactive process supports an inference of disability discrimination.  "[A]n employer's failure to engage in a good faith interactive process can be introduced as evidence tending to show disability discrimination . . . and that the employer has refused to make [a reasonable] accommodation."  *Cayetano v. FedEx Corp.*, No. 19 Civ. 10619, 2022 WL 2467735, at *7 (S.D.N.Y. July 6, 2022) (quoting *Sheng v. M&T Bank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017)) (second alteration in original).  On January 24, 2018,

Cooke interviewed Plaintiff to determine the impact her disabilities had on her work.  Cooke's notes state that she asked Plaintiff to accept a demotion, which Plaintiff declined to do.  ECF No. 110-132 at 2–3.  But, the notes demonstrate no effort to meaningfully engage in an interactive process to determine whether a reasonable accommodation could help Plaintiff perform her job duties.  *See generally id.*  And, Defendants have failed to explain how the two adverse actions— the June 2018 demotion and the August 2019 reassignment to the reception desk—constitute an accommodation, reasonable or not.  Moreover, there is a genuine dispute of material fact as to whether Plaintiff requested a reasonable accommodation in the form of a dictation device. *Compare* Pl. 56.1 ¶¶ 473–75, *and* ECF No. 110-1 at 24:23–25:14, *with* Defs. Reply at 8.  Here, a reasonable jury could conclude that Defendants tried to force Plaintiff into accepting a voluntary demotion without exploring options for a reasonable accommodation, thus supporting an inference that discrimination was a but-for cause of Defendants' adverse actions.  *See E.E.O.C. v. Yellow Freight Sys., Inc.*, No. 98 Civ. 2270, 2022 WL 31011859, at *23–24 (S.D.N.Y. Sept. 9, 2022).

Defendants primarily argue that Plaintiff cannot raise an inference of discrimination because her allegations of disability discrimination are self-serving statements unsupported by record evidence.  *See* Defs. Reply at 7–12.  Although "a plaintiff's own self-serving statements are insufficient to raise a triable issue of fact," *Rhone*, 2007 WL 3340836, at *9, here, at least some of Plaintiff's assertions are buttressed by other evidence.  Plaintiff on several occasions filed complaints with the EEOC, which articulate similar allegations of disability discrimination to those she makes in her deposition and filings.  For example, in a February 2018 EEOC investigation report, Plaintiff alleged that Constantine addressed Plaintiff's CPS supervisees, stating, "[y]ou know [Plaintiff] and her medical problems; I know she is not giving you

supervision." ECF No. 110-117 at 2. *See, e.g.*, *Baron v. Adv. Asset & Prop. Mgt. Sols., LLC*, 15 F. Supp. 3d 274, 283 (E.D.N.Y. 2014). Moreover, as described above, Defendants' internal communications support an inference of disability discrimination.

The Court, therefore, finds that Plaintiff has made out a prima facie case of disability discrimination because she has shown that she is a member of a protected class, she was qualified for her position, she suffered two adverse employment actions, and the adverse actions occurred under circumstances giving rise to an inference of discrimination. *See Ben-Levy*, 518 F. App'x at 18–19. Under the *McDonnell Douglas* framework, the burden shifts to Defendants to offer a legitimate, nondiscriminatory business rationale for their actions. *See id.* at 19.

As to the June 2018 demotion, the Court finds that Defendants have satisfied their burden of articulating a "legitimate, non-discriminatory reason" for the demotion. *Cayetano*, 2022 WL 2467735, at *9. Defendants argue that Plaintiff failed to adequately perform her work duties, citing "her verbal approach when speaking with clients and staff, [un]timely supervisory reviews and documentation, [un]timely submission of safety assessments and investigations, [poor] unit caseload management, and [failure to adhere] to court appearances." Defs. Mem. at 13. Defendants point to the deficiencies identified in Plaintiff's performance evaluations and her declining reviews. *See id.* Defendants also argue that Plaintiff was demoted in part because ACS received many complaints from Plaintiff's subordinates regarding her treatment of them. Pl. 56.1 ¶¶ 43–61.

However, the Court also finds that Plaintiff has established a genuine dispute of material fact as to whether Defendants' proffered, nondiscriminatory reasons for the June 2018 demotion were a mere pretext for actual discrimination. *See Ben-Levy*, 518 F. App'x at 19. An employment discrimination claimant may show pretext by demonstrating "such weaknesses,

implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Baron*, 15 F. Supp. 3d at 283–84.  A plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight" if she is to withstand summary judgment. *Smith v. Am. Exp. Co.*, 853 F.2d 151, 155 (2d Cir.1988).

Here, Defendants have offered shifting and somewhat inconsistent explanations for Plaintiff's demotion.[7]  For example, on October 10, 2017, Kellam wrote that Plaintiff's medical condition was "impacting her work as a [s]upervisor."  ECF No. 110-27 at 7.  But, after she requested that Plaintiff be demoted and was advised by ACS human resources that "[t]hese are concerns that must be very carefully addressed," Kellam pivoted and wrote, "Just a[n] fyi.  Her medical condition is not the problem, she cannot do the work."  *Id.* at 2.

The timeline of events also raises a genuine dispute of material fact as to the legitimacy of Defendants' proffered reasons.  For instance, on January 24, 2018, Cooke interviewed Plaintiff to determine the impact her disabilities had on her work, ECF No. 110-132, but that was after Kellam had already requested that Plaintiff's level be demoted from CPSS II to CPSS I on December 15, 2017.  *See* Pl. 56.1 ¶ 122.  Likewise, Plaintiff received her first "Unsatisfactory" performance evaluation on May 17, 2018, and a CAP on May 23, 2018, *see* Pl. 56.1 ¶¶ 39–41, months after Kellam requested the demotion; the performance evaluation and CAP were later used to justify Plaintiff's subsequent demotion.  And, Defendants stated in email communications that they intended to use Plaintiff's missed training due to wound care as "part

---

[7] Because a plaintiff's showing of an inference of discrimination in the prima facie case and her subsequent showing of pretext "tend to collapse as a practical matter under the *McDonnell Douglas* framework," *Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 118 n.1 (2d Cir. 2022), the Court considers Plaintiff's evidence adduced in support of her prima facie case in the pretext analysis.

of the package" in support of her demotion.  ECF No. 110-41 at 2.  Taken together, and viewed in the light most favorable to Plaintiff, a reasonable jury could find that after being advised as to the legal implications of demoting Plaintiff because of her disabilities, Defendants set out to assemble a pretextual "package" to provide nondiscriminatory reasons for her demotion.

As to the August 2019 reassignment to the reception desk, the Court finds that Defendants have not satisfied their burden to articulate a legitimate, nondiscriminatory reason for the action.  *Cayetano*, 2022 WL 2467735, at *9.  Defendants argue that "Plaintiff was assigned to the reception desk as a [reasonable accommodation] due to doctor's notes indicating she had continued medical issues and could not come into the office."  Defs. Reply at 4.  But, there was no interactive process to determine whether being reassigned to the reception desk was a reasonable accommodation, and Plaintiff did not request such reassignment.  *Cf Greenbaum v. N.Y.C. Transit Auth.*, No. 21-1777, 2022 WL 3347893, at *5 (2d Cir. Aug. 15, 2022) (summary order).  When Cooke asked Kellam to provide proof of the receptionist "accommodation," Kellam did not respond.  ECF No. 110-65 at 2.  And, Defendants have not explained how removing Plaintiff from her duties and placing her in the lobby to interact with the public would serve as a reasonable accommodation to her documented disabilities.  *See Stratton v. NYC Dept. for Aging*, 132 F.3d 869, 880 n.6 (2d Cir. 1997) (holding that an employer's failure to meaningfully consider options other than the adverse action was sufficient to support a finding of pretext).

Accordingly, for the reasons stated, Defendants' motion for summary judgment on Plaintiff's disability discrimination claims under the ADA, the Rehab Act, the NYSHRL, and the NYCHRL is DENIED.[8]

---

[8] Because discrimination claims under the NYCHRL are reviewed "more liberally than" discrimination claims under the ADA, the Rehab Act, and the NYSHRL, *Ben-Levy*, 518 F. App'x at 19–20 (citation omitted), the Court finds

2.   National Origin Discrimination

By contrast, viewing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has not raised an inference of national origin discrimination.  Plaintiff argues that the record supports an inference of national origin discrimination because (1) Constantine made numerous negative comments about Plaintiff's accent and called Plaintiff a "foreigner"; (2) Plaintiff was treated worse than her non-Nigerian colleagues with performance issues; and (3) another Nigerian employee warned Plaintiff about Constantine.  Pl. Opp. at 21–23.

Putting aside Plaintiff's self-serving statements not supported by the record, *see Rhone*, 2007 WL 3340836, at *9, the documented evidence of Constantine's comments comes from Plaintiff's complaints in March and August 2015, and January and February 2018.  *See* ECF Nos. 101-56, 101-79, 101-82.  These occasional allegations of discriminatory comments from Constantine, over the span of several years, are too attenuated to establish an inference that national origin discrimination was a "motivating factor" for Defendants' adverse actions. *Naumovski*, 934 F.3d at 213.  Importantly, Kellam, not Constantine, was responsible for both requesting Plaintiff's June 2018 demotion and reassigning Plaintiff to the reception desk in August 2019.  *See* Pl. 56.1 ¶ 88.  But, Plaintiff does not claim that Kellam made statements about Plaintiff's accent or national origin.  Plaintiff's nearly thirty-year employment at ACS and multiple promotions further undermine her claim of discrimination; unlike her disability status, Plaintiff's national origin status did not change during that time.

Nor do Plaintiff's other arguments raise an inference of national origin discrimination. First, although a showing of disparate treatment "is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case[,] . . . [a] plaintiff relying on

_____

that Plaintiff has raised a genuine dispute of material fact as to her NYCHRL discrimination claim, for the reasons stated above.

disparate treatment evidence 'must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (emphasis and citation omitted). Here, the Court finds that Plaintiff has not provided sufficient evidence to conclude that she was "similarly situated in all material respects" to her non-Nigerian colleagues with performance issues, particularly because those colleagues demonstrated noted improvements in their performance evaluations after 2016. *See, e.g.*, ECF Nos. 101-70, 115-1. Second, Plaintiff's self-serving statement that another employee warned her about Constantine is not supported by evidence beyond Plaintiff's own testimony. *See* Pl. 56.1 ¶¶ 491–94. Plaintiff's statements, alone, do not create a triable issue of fact. *See Rhone*, 2007 WL 3340836, at *9; *Weinstock*, 224 F.3d at 41.

Even under the more liberal NYCHRL standard, Plaintiff has not shown that she was treated less well due to Defendants' national origin discrimination because Plaintiff fails to draw any link between Constantine's occasional comments and Defendants' actions against her. *Ya-Chen Chen*, 805 F.3d at 74–75. After viewing the record in the light most favorable to Plaintiff, the Court concludes that Plaintiff has not raised a genuine dispute of material fact as to whether certain of Defendants' acts—including delaying her accommodation request to telecommute during the Covid-19 pandemic, denying her access to certain remote resources, giving her "no duties to do at home during COVID," or allegedly reducing her paycheck—were motivated by national origin discrimination. Pl. Opp. at 24.

Accordingly, for the reasons stated, Defendants' motion for summary judgment on Plaintiff's national origin discrimination claims under Title VII, the NYSHRL, and the NYCHRL is GRANTED.

### C.  Hostile Work Environment Claims

A hostile work environment claim under the NYCHRL requires a plaintiff to demonstrate "differential treatment—that she is treated 'less well'—because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N.A., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).  There is no "severe and pervasive" threshold, unlike the standard for a hostile work environment claim under the ADA, Title VII, and the NYSHRL.[9]  *Id.* at 108.  However, "[a]lthough [the NYCHRL] test is easier to meet than the tests for hostile work environment claims under the NYCHRL's state and federal analogues, behavior that 'could only be reasonably interpreted by a trier of fact as representing no more than petty slights and trivial inconveniences' still does not suffice." *Ardigo v. J. Christopher Capital, LLC*, No. 12 Civ. 3627, 2013 WL 1195117, at *4 (S.D.N.Y. Mar. 25, 2013) (quoting *Williams v. City of New York Hous. Auth.*, 872 N.Y.S.2d 27, 41 (N.Y. App. Div. 2009)).

Applying those standards here, Plaintiff fails to raise a genuine dispute of material fact as to her hostile work environment cause of action.  Plaintiff bases this claim on Constantine's comments about her disabilities and national origin, *see* Pl. Opp. at 28–29, but the only recorded complaints regarding such comments were made in March and August 2015, and January and February 2018.  *See* ECF Nos. 101-56, 101-79, 101-82.  These were sporadic comments and

---

[9] In her opposition papers, Plaintiff suggests that she also raises a hostile work environment claim under the ADA Title VII, and the NYSHRL.  *See, e.g.*, Pl. Opp. at 27, 30.  But, the complaint only pleads hostile work environment claims under the NYCHRL.  *See* Compl. ¶¶ 228–36.  Nonetheless, the legal standard for raising a hostile work environment claim under the NYCHRL is broader than that under the ADA, Title VII, and the NYSHRL.  To prevail on a hostile work environment claim under the ADA, Title VII, and the NYSHRL, a plaintiff must show "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer."  *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (cleaned up).  Courts look to the totality of the circumstances to determine whether a plaintiff has met this burden, including "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  Therefore, the Court's analysis in this section applies even if Plaintiff had properly alleged hostile work environment claims under the ADA, Title VII, and NYSHRL.  *See Fox*, 918 F.3d at 74, 76.

amount to "no more than petty slights and trivial inconveniences." *Ardigo*, 2013 WL 1195117, at *4. Plaintiff's self-serving testimony that the comments about her disabilities and national origin were frequent is contrary to the record evidence, and thus, insufficient to defeat summary judgment. *Cf. Deebs v. ALSTOM Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009). Moreover, Plaintiff has failed to adduce evidence suggesting that Constantine's comments were motivated by disability or national origin discrimination, rather than personal animus.

Accordingly, for the reasons stated, Defendants' motion for summary judgment on Plaintiff's hostile work environment claims under the NYCHRL is GRANTED.

### D.  FMLA Claims

In her opposition papers, Plaintiff has abandoned her FMLA interference claim. *See* Pl. Opp. at 30. Defendants set forth, under separate headings in their memorandum of law, arguments that support their motion for summary judgment on Plaintiff's FMLA claims. *See* Defs. Mem. at 28–29. Plaintiff provides no reason why the FMLA interference claim should not be dismissed. Such a failure to respond to arguments set forth in a moving party's brief is an adequate ground for a Court to deem the claim abandoned. *See Walker v. City of New York*, No. 14 Civ. 808, 2015 WL 4254026, at *3 (S.D.N.Y. July 14, 2015).

As to the FMLA retaliation claim, Plaintiff merely restates the elements of an FMLA retaliation cause of action and makes the conclusory assertion that she "raises triable issues of fact." Pl. Opp. at 30. Such conclusory statements are insufficient to carry Plaintiff's burden to establish a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Beard*, 548 U.S. at 529. Plaintiff "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto*, 143 F.3d at 114.

Accordingly, for the reasons stated, Defendants' motion for summary judgment on Plaintiff's FMLA claims for interference and retaliation is GRANTED.

### E.  Other Retaliation Claims

Under the ADA, the Rehab Act, Title VII, and the NYSHRL, a plaintiff's retaliation claim, like a discrimination claim, is "evaluated under a three-step burden-shifting analysis." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (Title VII); *see Dodd v. City Univ. of New York*, 489 F. Supp. 3d 219, 267–68 (S.D.N.Y. 2020) (ADA, Rehab Act, and NYSHRL); *see also McDonnell Douglas*, 411 U.S. at 802–05.  First, the plaintiff must establish a prima facie case of retaliation by showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jute*, 420 F.3d at 173 (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 282–83 (2d Cir. 2001)).  The plaintiff's burden in this regard is "de minimis," and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id.* (quotation marks omitted).

If the plaintiff sustains this initial burden, "a presumption of retaliation arises." *Id.*  The defendant must then "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.*  If so, "the presumption of retaliation dissipates[,] and the employee must show that retaliation was a substantial reason for the adverse employment action." *Id.*  A plaintiff can sustain this burden by proving that "a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).

Retaliation claims under the NYCHRL are not treated identically to their federal and state counterparts and must be analyzed independently. *See Ya-Chen Chen*, 805 F.3d at 75–76.  First, the NYCHRL's definition of retaliation is broader than that in the state and federal statutes. "[R]ather than requiring a plaintiff to show an adverse employment action, the NYCHRL only requires her to show that something happened that was reasonably likely to deter a person from engaging in protected activity." *Xiang v. Eagle Enters., LLC*, No. 19 Civ. 1752, 2020 WL 248941, at *9 (S.D.N.Y. Jan. 16, 2020) (cleaned up).  Second, the NYCHRL does not require a plaintiff to show but-for causation.  Instead, "summary judgment is appropriate only if the plaintiff cannot show that retaliation played any part in the employer's decision." *Mihalik*, 715 F.3d at 116 (2d Cir. 2013).

The parties agree that Plaintiff has established the first three prongs of a prima facie case of retaliation: (1) Plaintiff participated in protected activity when she filed her EEOC charge on March 3, 2019; (2) Defendants had knowledge of the EEOC charge given their rebuttal statement dated July 20, 2019; and (3) Plaintiff's August 2019 reassignment to the reception desk was an adverse action.  *See* Pl. Opp. at 25; Def. Reply at 15 & n.8; *see also Jute*, 420 F.3d at 173.  The parties dispute whether Plaintiff has shown "a causal connection between the protected activity and the adverse employment action." *Jute*, 420, F.3d at 173; *see* Def. Reply at 15.

Here, the Court finds that Plaintiff has shown a causal connection given the temporal proximity between her March 3, 2019 EEOC complaint, her June 10, 2019 return from FMLA leave, and her reassignment to the reception desk on August 17, 2019.  *See Gorzynski, v. Jetblue Airways Corp.*, 596 F.3d 93, 110–11 (2d Cir. 2010).  Defendants argue that Plaintiff cannot establish temporal proximity because "eight months elapsed between [Plaintiff's] receptionist assignment and her EEOC charge."  Defs. Reply at 15.  Putting aside the factual misstatement

(six months elapsed), Defendants first opportunity to retaliate was not until June 2019, when Plaintiff returned from FMLA leave. Courts in this Circuit have held much longer periods of time to be sufficient for establishing temporal proximity. *See, e.g.*, *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013); *Bucalo v. Shelter Is. Union Free Sch. Dist.*, 691 F.3d 119, 131 (2d Cir. 2012). Therefore, the Court finds that Plaintiff has established a prima facie case of retaliation.

For the reasons discussed above, *see supra* § II.B.1, the Court finds that Defendants have not satisfied their burden to articulate a legitimate, nonretaliatory reason for the reassignment. *Jute*, 420 F.3d at 173. Defendants' purported reason that "Plaintiff was assigned to the reception desk as a [reasonable accommodation] due to doctor's notes indicating she had continued medical issues and could not come into the office," Defs. Reply at 4, is belied by the fact that there was no interactive process, Plaintiff did not request reassignment to the reception desk, Kellam could not provide documentary proof of the reasonable accommodation, and Defendants have not explained how assigning Plaintiff to receptionist duties would accommodate her documented disabilities. *See supra* § II.B.1.

Accordingly, for the reasons stated, Defendants' motion for summary judgment on Plaintiff's retaliation claims under the ADA, the Rehab Act, Title VII, the NYSHRL, and the NYCHRL is DENIED.[10]

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part, and DENIED in part. Specifically:

---

[10] Because retaliation claims under the NYCHRL are reviewed under a more liberal standard than retaliation claims under the ADA, the Rehab Act, Title VII, and the NYSHRL, *Ya-Chen Chen*, 805 F.3d at 75–76, the Court finds that Plaintiff has raised a genuine dispute of material fact as to her NYCHRL retaliation claim, for the reasons stated.

- Plaintiff's national origin discrimination claims under the Title VII, the NYSHRL, and the NYCHRL are DISMISSED.

- Plaintiff's hostile work environment claims under the NYCHRL are DISMISSED.

- Plaintiff's FMLA interference and retaliation claims are DISMISSED.

Plaintiff may proceed to trial on the following claims:

- Disability discrimination claims under the ADA, the Rehab Act, the NYSHRL, and the NYCHRL.

- Retaliation claims under the ADA, the Rehab Act, Title VII, the NYSHRL, and the NYCHRL.

The Court shall issue a separate order setting a trial date and related pre-trial deadlines in due course.  The Clerk of Court is directed to terminate the motion at ECF No. 101.

SO ORDERED.

Dated: September 27, 2023
        New York, New York

_____
ANALISA TORRES
United States District Judge